Robert L. Powley (RP 7674)
Stephen M. Ankrom (SA 5375)
POWLEY & GIBSON, P.C.
60 Hudson Street, Suite 2203
New York, NY 10013
Telephone: (212) 226-5054
Facsimile: (212) 226-5085
   rlpowley@powleygibson.com
   smankrom@powleygibson.com

Christopher J. Renk
Michael J. Harris
Kurt C. Riester
BANNER & WITCOFF, LTD.
71 S. Wacker Drive, Suite 3600
Chicago, Illinois  60606
Telephone: (312) 463-5000
Facsimile: (312) 463-5001

Attorneys for Plaintiff,
Converse Inc.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**

| | |
|---|---|
| **CONVERSE INC.,** | |
| **Plaintiff,** | |
| v. | Civil Action No. 20-cv-817 |
| **HIGHLINE UNITED LLC** **D/B/A ASH FOOTWEAR USA,** | |
| **Defendant.** | **Jury Trial Demanded** |

**COMPLAINT**

This case is about protecting Converse Inc.'s ("Converse's") trademark rights in an iconic shoe design.  The shoe design at issue:

> "[was] … the ultimate insider shoe for the top athletes back in the first 50 years of its existence, and then it was the ultimate outsider shoe. But it's always been a mainstream shoe, too. It sort of represents America."

Whitney Matheson, *Converse: 100 Years Young*, USA Today, Mar. 12, 2008, at 3D (quoting Hal Peterson).

Plaintiff Converse, for its complaint against Defendant Highline United LLC d/b/a ASH Footwear USA ("Defendant" or "Successor Highline"), alleges as follows:

### The Parties

1. Converse is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 160 North Washington Street, Boston, Massachusetts 02114. Founded in Massachusetts as the Converse Rubber Shoe Company in 1908, Converse is a leading producer of footwear, apparel, and accessories. Converse footwear appears in rock clubs, on the streets, on rappers, icons, celebrities, athletes, rebels, and originals.

2. On October 14, 2014, Converse filed a lawsuit in this District against a different entity also called Highline United LLC ("Predecessor Highline") alleging, *inter alia*, infringement of Converse's registered and common-law trademark rights. *See Converse Inc. v. Highline United LLC*, No. 1:14-cv-05992-NGG-SJB, Dkt. 1 (E.D.N.Y Oct. 14, 2014) (the "Predecessor Highline Case").

3. Also on October 14, 2014, Converse requested that the United States International Trade Commission ("ITC") institute an investigation against Predecessor Highline, among others, under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("Section 337"), based on the unlawful importation into the United States, sale for importation into the United States, or sale within the United States after importation, of certain footwear products that violate Converse's rights in a registered and common law trademark used in connection with certain Converse shoes

(the "ITC Investigation").  Converse shoes bearing the trademark asserted in this matter are referred to as "Converse Shoes."  The Predecessor Highline Case was stayed pending resolution of the ITC Investigation on December 17, 2014.

4. On June 28, 2019, Successor Highline filed a motion in the ITC Investigation seeking to substitute itself into the ITC Investigation in the place of Predecessor Highline.  (Ex. 1.)  In the so-called Motion to Substitute Parties, Successor Highline represented that Predecessor Highline had dissolved as a result of bankruptcy proceedings.  Successor Highline also represented that it "sells imported ASH-branded shoes bearing toe caps, toe bumpers, and midsole stripes— including the ASH-branded Vincent and Virgin shoe styles that were previously imported and sold by [Predecessor Highline] and which were identified as accused products by Converse."  (Ex. 1, 4.)  To support this assertion, Successor Highline attached to its Motion to Substitute Parties screenshots from the website www.ash.com reflecting shoe styles apparently sold by Successor Highline.  (*Id*. at Ex. D.)  Successor Highline also represented that it assumed the "ASH Distribution Agreement" from Predecessor Highline.  (*Id*., 4.)  The Motion to Substitute Parties was granted.

5. On December 9, 2019, counsel for Predecessor Highline filed a motion to withdraw as counsel in the Predecessor Highline Case.  *See Converse Inc. v. Highline United LLC*, No. 1:14-cv-05992-NGG-SJB, Dkt. 26 (E.D.N.Y Dec. 9, 2019).  In the motion, counsel for Predecessor Highline averred that Predecessor Highline no longer exists and, thus, counsel for Predecessor Highline no longer had authority to act on behalf of any party or otherwise participate in the Predecessor Highline Case.  In view of these representations, Converse is dismissing the Predecessor Highline Case and initiating this lawsuit against Successor Highline.

6. On information and belief, Defendant Successor Highline is a corporation organized and existing under the laws of the State of Delaware with a principal place of business in Massachusetts. On information and belief, Successor Highline has continued, at least in part, the business operations of Predecessor Highline. On information and belief, Successor Highline was formed for the purpose of continuing the business operations of Predecessor Highline. On information and belief, certain shareholders, officers, directors, and employees of Successor Highline were previously shareholders, officers, directors, or employees of Predecessor Highline. On information and belief, Successor Highline's principal place of business was formerly Predecessor Highline's principal place of business.

## Jurisdiction and Venue

7. This is an action for trademark infringement, false designation of origin, unfair competition, trademark dilution, and unfair business practices. This action arises under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq*. ("Lanham Act"), New York General Business Law §§ 133, 349, 360, and the common law of the State of New York.

8. This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) & (b), and 1367(a).

9. On information and belief, this Court may exercise personal jurisdiction over Defendant based upon its contacts with this forum, including regularly and intentionally doing business here and/or committing acts giving rise to this lawsuit here.

10. Venue is proper in this judicial district pursuant to at least 28 U.S.C. §§ 1391(b) and (c).

## General Allegations – Converse's Asserted Trademark

11. Converse owns rights in the appearance of the midsole design used in connection with Converse Shoes. Converse owns common law and federal trademark rights in the distinctive midsole design made up of a toe bumper and a toe cap, plus either an upper stripe and/or a lower stripe, including U.S. Trademark Registration No. 4,398,753 (the "Asserted Trademark"). A certified copy of the U.S. Trademark Registration Certificate for the Asserted Trademark is attached as Exhibit 2. Exemplary images of the Asserted Trademark are shown in Illustration 1 below.



**Illustration 1: Examples of the Asserted Trademark**

12. Converse first introduced a distinctive combination of design elements closely resembling the Asserted Trademark on "All Star" high-top sneakers in 1917.  By 1932, the Asserted Trademark acquired its present-day appearance.  In 1934, Converse Shoes bearing the design were eponymously renamed "Chuck Taylor" after a Converse salesman and basketball player.  In 1957, Converse introduced a low top, or "oxford," version of shoes bearing the Asserted Trademark.  Converse has also used the Asserted Trademark in connection with other footwear products, including but not limited to, "One Star" and "Star Player" shoe models.  Consumers often refer to shoes bearing the Asserted Trademark as "All Stars," "Chuck Taylors," "Chucks," or "Chuck sneakers."  All told, Converse has continuously manufactured, promoted, and sold shoes bearing the Asserted Trademark for more than 85 years.

13. Since their introduction around 1917, Converse has sold approximately one billion pairs of shoes bearing the Asserted Trademark worldwide.  Converse has spent hundreds of millions of dollars advertising and promoting shoes bearing the Asserted Trademark.  Converse's advertisements and promotions of the Asserted Trademark have appeared in print, on the Internet, on billboards, in videos, and at retail.  Converse spends millions of dollars each year advertising and promoting the Asserted Trademark in the United States.  The Asserted Trademark is also the subject of widespread and unsolicited public attention.  This publicity extends from acclaim in books, magazines, and newspapers to frequent appearances in movies and television shows.  Over the last century, celebrities, professional athletes, and other prominent figures have been publicized wearing Converse Shoes bearing the Asserted Trademark.

14. Converse has served over 120 cease-and-desist letters at trade shows, and served additional letters and filed federal district court lawsuits, to protect consumer perceptions and to police the Asserted Trademark.

15. Defendants in federal district court lawsuits have entered into consent judgments admitting that the trademarks at issue in those lawsuits, including the Asserted Trademark, are "distinctive and non-functional," "well known, famous and associated with Converse, and that the goodwill appurtenant thereto belongs exclusively to Converse."

16. Likewise, violators to whom Converse sent cease-and-desist letters entered into settlement agreements in which violators admit that the midsole design of the Asserted Trademark is well known, famous, and associated with Converse; non-functional; and valid and enforceable.

17. As a result of more than 85 years of substantially exclusive use of the Asserted Trademark; ubiquitous advertising, sales, and distribution of shoes bearing the Asserted Trademark; the intentional copying and recognition of Converse's rights by others; and because of the vast unsolicited and salutary publicity of the Asserted Trademark in connection with Converse, the Asserted Trademark enjoys substantial secondary meaning as a trademark connected with Converse and is, and was at all relevant times, famous among the general consuming public of the United States and in New York.

## General Allegations – Defendant's Unauthorized Activities

18. On information and belief, Defendant sells, offers to sell, distributes, promotes, and/or advertises footwear products bearing confusingly similar imitations of the Asserted Trademark (the "Accused Products") that are likely to cause consumer confusion with and dilution of the famous Asserted Trademark.

19. On information and belief, Defendant sells, offers to sell, distributes, promotes, and/or advertises Accused Products in competition with Converse.

20. On information and belief, Defendant's Accused Products travel in similar channels of trade and are sold to similar consumers as Converse Shoes bearing the Asserted Trademark.

21. On information and belief, Defendant sells, offers to sell, distributes, promotes, and/or advertises the Accused Products in several styles, including at least its "Virgin" footwear products. Illustration 2 below compares the Asserted Trademark to an image of a representative Accused Product.



**Illustration 2: Exemplary Images of the Asserted Trademark (left), Exemplary Image of Defendant's Accused Products (right)**

Virgin

22. Converse owned valid rights in the Asserted Trademark, and the Asserted Trademark was famous in connection with Converse, before Defendant began selling, offering to sell, distributing, promoting, or advertising the Accused Products.

23. Converse has never authorized Defendant to use the Asserted Trademark.

24. On information and belief, Defendant knew of the Asserted Trademark before it began selling, offering to sell, distributing, promoting, and/or advertising the Accused Products.

25. On information and belief – and as evidenced by the facts and circumstances alleged above – Defendant has intentionally and willfully violated the Asserted Trademark.

## Count I: Trademark Infringement under Section 32(1) of the Lanham Act
## (15 U.S.C. § 1114(1))

26. Converse re-alleges each and every allegation set forth in paragraphs 1 through 25 above, inclusive, and incorporates them by reference herein.

27. Defendant's offers to sell, sales, distribution, promotion, and/or advertisement of Accused Products violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

28. Converse owns duly issued and validly subsisting rights in U.S. Trademark Registration No. 4,398,753 covering the Asserted Trademark. The Asserted Trademark has a distinctive overall appearance that is non-functional, and has also acquired substantial secondary meaning in the marketplace through Converse's extensive and continuous use, advertising, promotion, and sales of products bearing the Asserted Trademark for many decades in the United States. Through that extensive and continuous use, advertising, promotion, and sales, the Asserted Trademark became a well-known indicator of the origin and/or quality of Converse footwear before Defendant's unauthorized use of the Asserted Trademark.

29. Defendant's use of the Asserted Trademark and/or colorable imitations thereof is likely to cause consumer confusion as to the origin, sponsorship, or approval of the Accused Products, at least by creating the false and misleading impression that the Accused Products are manufactured by, authorized by, or otherwise associated with Converse.

30. Defendant's use of the Asserted Trademark and/or colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Converse for which Converse has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Asserted Trademark.

31. On information and belief, Defendant's use of the Asserted Trademark and/or colorable imitations thereof has been intentional and willful as is evidenced at least by the near

identical similarity of the Accused Products to the Asserted Trademark, as demonstrated in Illustration 2 above, and by Defendant's knowledge of the Asserted Trademark before it began selling, offering to sell, distributing, promoting, and/or advertising the Accused Products.

32. As a result of Defendant's conduct, Converse is entitled to injunctive relief, and Converse is also entitled to recover Defendant's profits, Converse's non-duplicative actual damages, enhanced profits and damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1114, 1116, and 1117.

### Count II: False Designation of Origin/Unfair Competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

33. Converse re-alleges each and every allegation set forth in paragraphs 1 through 32 above, inclusive, and incorporates them by reference herein.

34. Defendant's offers to sell, sales, distribution, promotion, and/or advertisement of Accused Products, in competition with Converse, violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

35. The Asserted Trademark is federally registered under U.S. Trademark Registration No. 4,398,753, and is entitled to protection under both federal law and common law. The Asserted Trademark has a distinctive overall appearance that is non-functional, and has also acquired substantial secondary meaning in the marketplace through Converse's extensive and continuous use, advertising, promotion, and sales of products bearing the Asserted Trademark for many decades in the United States. Through that extensive and continuous use, advertising, promotion, and sales, the Asserted Trademark became a well-known indicator of the origin and/or quality of Converse footwear before Defendant's unauthorized use of the Asserted Trademark.

36. Defendant's use of the Asserted Trademark and/or colorable imitations thereof constitutes a false designation of origin and/or unfair competition that is likely to cause consumer

confusion, mistake, or deception as to the origin, sponsorship, or approval of the Accused Products by creating the false and misleading impression that the Accused Products are manufactured by, authorized by, or otherwise associated with Converse.

37. Defendant's use of the Asserted Trademark and/or colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Converse for which Converse has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Asserted Trademark.

38. On information and belief, Defendant's use of the Asserted Trademark and/or colorable imitations thereof has been intentional and willful as is evidenced at least by the near identical similarity of the Accused Products to the Asserted Trademark, as demonstrated in Illustration 2 above, and by Defendant's knowledge of the Asserted Trademark before it began selling, offering to sell, distributing, promoting, and/or advertising the Accused Products.

39. As a result of Defendant's conduct, Converse is entitled to injunctive relief, and Converse is also entitled to recover Defendant's profits, Converse's non-duplicative actual damages, enhanced profits and damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

**Count III: Dilution under Section 43(c) of the Lanham Act 15 U.S.C. § 1125(c)**

40. Converse re-alleges each and every allegation set forth in paragraphs 1 through 39 above, inclusive, and incorporates them by reference herein.

41. Defendant's offers to sell, sales, distribution, and/or advertisement of Accused Products violates Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

42. The Asserted Trademark is federally registered under U.S. Trademark Registration No. 4,398,753, and is entitled to protection under both federal law and common law. The Asserted

Trademark has a distinctive overall appearance that is non-functional, and has also acquired substantial secondary meaning in the marketplace through Converse's extensive and continuous use, advertising, promotion, and sales of products bearing the Asserted Trademark for many decades in the United States. Through that extensive and continuous use, advertising, promotion, and sales, the Asserted Trademark became a famous and well-known indicator of the origin and/or quality of Converse footwear before Defendant's unauthorized use of the Asserted Trademark.

43. Defendant's use of the Asserted Trademark and/or colorable imitations thereof is likely to dilute the famous Asserted Trademark at least by eroding the public's identification of the famous Asserted Trademark with Converse and by lessening the capacity of the famous Asserted Trademark to identify and distinguish Converse products.

44. Defendant's use of the Asserted Trademark and/or colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Converse for which Converse has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Asserted Trademark, and an erosion of the distinctiveness of the Asserted Trademark.

45. On information and belief, Defendant's use of the Asserted Trademark and/or colorable imitations thereof has been intentional and willful as is evidenced at least by the near identical similarity of the Accused Products to the Asserted Trademark, as demonstrated in Illustration 2 above, and by Defendant's knowledge of the Asserted Trademark before it began selling, offering to sell, distributing, promoting, and/or advertising the Accused Products.

46. Converse is entitled to injunctive relief, and Converse is also entitled to recover Defendant's profits, Converse's non-duplicative actual damages, enhanced profits and damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1125(c), 1116, and 1117.

**Count IV: Common Law Trademark Infringement and Unfair Competition**

47. Converse re-alleges each and every allegation set forth in paragraphs 1 through 46 above, inclusive, and incorporates them by reference herein.

48. Defendant's offers to sell, sales, distribution, promotion, or advertisement of Accused Products, in competition with Converse, constitutes common law trademark infringement and unfair competition.

49. The Asserted Trademark is entitled to protection under the common law of the State of New York.  The Asserted Trademark has a distinctive appearance that is non-functional, and has also acquired substantial secondary meaning in the marketplace through Converse's extensive and continuous use, advertising, promotion, and sales of products bearing the Asserted Trademark for many decades in the United States.  Through that extensive and continuous use, advertising, promotion, and sales, the Asserted Trademark became a well-known indicator of the origin and/or quality of Converse footwear before Defendant's unauthorized use of the Asserted Trademark.

50. Defendant's use of the Asserted Trademark and/or colorable imitations thereof is likely to cause consumer confusion as to the origin or sponsorship of the Accused Products by creating the false and misleading impression that the Accused Products are manufactured by, authorized by, or otherwise associated with Converse.

51. Defendant's use of the Asserted Trademark and/or colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Converse for which Converse has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Asserted Trademark.

52. On information and belief, Defendant's use of the Asserted Trademark and/or colorable imitations thereof has been intentional and willful as is evidenced at least by the near identical similarity of the Accused Products to the Asserted Trademark, as demonstrated in

Illustration 2 above, and by Defendant's knowledge of the Asserted Trademark before it began selling, offering to sell, distributing, promoting, and/or advertising the Accused Products.

53. As a result of Defendant's conduct, Converse is entitled to injunctive relief, and Converse is also entitled to recover Defendant's profits, Converse's non-duplicative actual damages, punitive damages, costs, and reasonable attorney fees.

### Count V: Unlawful Deceptive Acts and Practices under New York General Business Law § 349

54. Converse re-alleges each and every allegation set forth in paragraphs 1 through 53 above, inclusive, and incorporates them by reference herein.

55. Defendant's offers to sell, sales, distribution, promotion, or advertisement of Accused Products, in competition with Converse, violates section 349 of New York General Business Law.

56. The Asserted Trademark is entitled to protection under New York law. The Asserted Trademark has a distinctive appearance that is non-functional, and has also acquired substantial secondary meaning in the marketplace through Converse's extensive and continuous use, advertising, promotion, and sales of products bearing the Asserted Trademark for many decades in the United States. Through that extensive and continuous use, advertising, promotion, and sales, the Asserted Trademark became a well-known indicator of the origin and/or quality of Converse footwear before Defendant's unauthorized use of the Asserted Trademark.

57. Defendant's use of the Asserted Trademark and/or colorable imitations thereof constitutes a deceptive act and/or practice in the conduct of Defendant's business, trade, and/or commerce, and a false designation of origin and/or unfair competition that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of the

Accused Products by creating the false and misleading impression that the Accused Products are manufactured by, authorized by, or otherwise associated with Converse.

58. Defendant's use of the Asserted Trademark and/or colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Converse for which Converse has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Asserted Trademark.

59. On information and belief, Defendant's use of the Asserted Trademark and/or colorable imitations thereof has been intentional and willful as is evidenced at least by the near identical similarity of the Accused Products to the Asserted Trademark, as demonstrated in Illustration 2 above, and by Defendant's knowledge of the Asserted Trademark before it began selling, offering to sell, distributing, promoting, and/or advertising the Accused Products.

60. As a result of Defendant's conduct, Converse is entitled to injunctive relief, and Converse is also entitled to recover actual damages, enhanced damages, punitive damages, and reasonable attorney's fees.

**Count VI: Trademark Infringement under New York General Business Law § 133**

61. Converse re-alleges each and every allegation set forth in paragraphs 1 through 60 above, inclusive, and incorporates them by reference herein.

62. Defendant's offers to sell, sales, distribution, promotion, or advertisement of Accused Products, in competition with Converse, violates section 133 of New York General Business Law.

63. The Asserted Trademark is entitled to protection under New York law. The Asserted Trademark has a distinctive appearance that is non-functional, and has also acquired substantial secondary meaning in the marketplace through Converse's extensive and continuous use, advertising, promotion, and sales of products bearing the Asserted Trademark for many

decades in the United States. Through that extensive and continuous use, advertising, promotion, and sales, the Asserted Trademark became a well-known indicator of the origin and/or quality of Converse footwear before Defendant's unauthorized use of the Asserted Trademark.

64. Defendant's use of the Asserted Trademark and/or colorable imitations thereof constitutes a false designation of origin and/or unfair competition that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of the Accused Products by creating the false and misleading impression that the Accused Products are manufactured by, authorized by, or otherwise associated with Converse.

65. Defendant's use of the Asserted Trademark and/or colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Converse for which Converse has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Asserted Trademark.

66. On information and belief, Defendant's use of the Asserted Trademark and/or colorable imitations thereof has been intentional, willful, and with the intent to deceive and/or mislead the public as is evidenced at least by the near identical similarity of the Accused Products to the Asserted Trademark, as demonstrated in Illustration 2 above, and by Defendant's knowledge of the Asserted Trademark before it began selling, offering to sell, distributing, promoting, and/or advertising the Accused Products.

67. As a result of Defendant's conduct, Converse is entitled to injunctive relief enjoining Defendant's conduct described above.

### Count VII: Dilution under New York General Business Law § 360-L

68. Converse re-alleges each and every allegation set forth in paragraphs 1 through 67 above, inclusive, and incorporates them by reference herein.

69. Defendant's offers to sell, sales, distribution, or advertisement of Accused Products violates section 360-L of New York General Business Law.

70. The Asserted Trademark is entitled to protection under New York law. The Asserted Trademark has a distinctive appearance that is non-functional, and has also acquired substantial secondary meaning in the marketplace through Converse's extensive and continuous use, advertising, promotion, and sales of products bearing the Asserted Trademark for many decades in the United States. Through that extensive and continuous use, advertising, promotion, and sales, the Asserted Trademark became a famous and well-known indicator of the origin and quality of Converse footwear before Defendant's unauthorized use of the Asserted Trademark.

71. Defendant's use of the Asserted Trademark and/or colorable imitations thereof on its Accused Products that are substantially similar to the Asserted Trademark is likely to dilute the famous Asserted Trademark at least by eroding the public's identification of the famous Asserted Trademark with Converse and by lessening the capacity of the famous Asserted Trademark to identify and distinguish Converse footwear products.

72. Defendant's use of the Asserted Trademark and/or colorable imitations thereof has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Converse for which Converse has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the Asserted Trademark.

73. On information and belief, Defendant's use of the Asserted Trademark and/or colorable imitations thereof has been intentional and willful as is evidenced at least by the substantial and near identical similarity of the Accused Products to the Asserted Trademark, as demonstrated in Illustration 2 above, and by Defendant's knowledge of the Asserted Trademark

before it began selling, offering to sell, distributing, promoting, and/or advertising the Accused Products.

74. As a result of Defendant's conduct, Converse is entitled to injunctive relief enjoining Defendant's conduct described above.

## Jury Demand

Converse demands a trial by jury.

## Relief Sought

WHEREFORE, Converse respectfully prays for:

A. Judgment that Defendant has (i) willfully infringed the Asserted Trademark in violation of § 1114 of Title 15 in the United States Code; (ii) willfully used false designations of origin and/or engaged in unfair competition in violation of § 1125(a) of Title 15 in the United States Code; (iii) willfully diluted the Asserted Trademark in violation of § 1125(c) of Title 15 in the United States Code; (iv) willfully infringed the Asserted Trademark and engaged in unfair competition in violation of the common law of New York; (v) willfully committed deceptive acts in violation of Section 349 of the New York General Business Law; (vi) willfully committed acts with the intent to deceive or mislead in violation of Section 133 of the New York General Business Law; and (vii) willfully diluted the Asserted Trademark in violation of Section 360 of the New York General Business Law.

B. An injunction prohibiting Defendant and each of its agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert therewith from continuing infringement, false designation of origin, unfair competition, and dilution of the Asserted Trademark, including at least from selling, offering to sell, distributing, or advertising

the Accused Products, or any other products that use a copy, reproduction, and/or colorable imitation of the Asserted Trademark;

  C. An order directing the destruction of all Accused Products, or any other products that use a copy, reproduction, and/or colorable imitation of the Asserted Trademark, in Defendant's possession or control, and the destruction of all advertising materials related to the Accused Products in Defendant's possession or control, including on the Internet;

  D. An award of Defendant's non-duplicative profits, Converse's actual damages, enhanced profits and damages, punitive damages, costs, and reasonable attorney fees for Defendant's trademark infringements and dilution, and acts of unfair competition and unfair business practices; and

  E. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: February 14, 2020

_____
Robert L. Powley (RP 7674)
Stephen M. Ankrom (SA 5375)
POWLEY & GIBSON, P.C.
60 Hudson Street, Suite 2203
New York, NY 10013
Telephone: (212) 226-5054
Facsimile: (212) 226-5085
 rlpowley@powleygibson.com
 smankrom@powleygibson.com

Christopher J. Renk
Michael J. Harris
Kurt C. Riester
BANNER & WITCOFF, LTD.
71 S. Wacker Drive, Suite 3600
Chicago, Illinois 60606
Telephone: (312) 463-5000

Facsimile: (312) 463-5001
crenk@bannerwitcoff.com
mharris@bannerwitcoff.com
kriester@bannerwitcoff.com

***Attorneys for Plaintiff, Converse Inc***.